**No. 23-2850**

# In the
# United States Court of Appeals
## for the Seventh Circuit

CHARLES CURRY, doing business as GET DIESEL NUTRITION,

*Plaintiff-Appellee,*

v.

REVOLUTION LABORATORIES, LLC, et al.,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:17-cv-02283.
The Honorable **Matthew F. Kennelly**, Judge Presiding.

## REPLY BRIEF OF APPELLANTS
## BARRY NUSSBAUM, JOSHUA NUSSBAUM and
## REVOLUTION LABORATORIES, LLC

MATTHEW DE PRETER
AMY M. GIBSON
GARY HOLLANDER
ARONBERG GOLDGEHN DAVIS
& GARMISA
225 West Washington Street, Suite 2800
Chicago, Illinois 60606
(312) 755-3153

*Counsel for Appellants*



## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

ARGUMENT ..................................................................................................... 1

I.     The Punitive Damages Award Is Excessive ........................................... 1

       A.     The Standard of Review is *De Novo* .......................................... 1

       B.     Defendants Have Not Forfeited Any of The Arguments Raised
              on Appeal. ..................................................................................... 1

       C.     Defendants' Conduct Was Not Sufficiently Reprehensible to
              Justify the Excessive Punitive Damages Award ............................ 4

              1.     First Factor – Curry Did Not Seek Damages for Emotional
                     Harm and the Emotional Harm Alleged Does Not
                     Constitute Physical Harm. .................................................. 5

              2.     Second Factor - Defendants' Conduct Did Not Impact the
                     Health or Safety of Curry or Others. .................................. 7

              3.     Third Factor – The Evidence Does Not Support Curry's
                     Financial Vulnerability. ...................................................... 9

              4.     Fourth Factor - The Defendants were not Recidivists. ...... 10

              5.     Fifth Factor - The Harm to Curry Did Not Result from
                     Intentional Malice, Trickery or Deceit. ............................. 11

       D.     The Ratio Between Compensatory and Punitive Damages is
              Excessive Under the Constitution and Illinois law. ..................... 14

              1.     Where All Defendants Are Liable to a Single Plaintiff for
                     the Same Actual and Punitive Damages, The Punitive
                     Damages Should Be Reviewed in the Aggregate and Not
                     on a Per-Defendant Basis. .................................................. 14

              2.     The District Court Erred in Including the Disgorgement
                     Award in the Punitive Damages Ratio Where the Jury
                     Awarded Actual Damages. .................................................. 15

3.      Even If the Disgorgement Award Is Included in the Ratio, It is Not Constitutionally Permissible to Base a Punitive Damages Award On Sales and Profits Made Outside of Illinois. ...................................................................................20

4.      The Ratio of Compensatory to Punitive Damages Is Excessive.............................................................................................22

E.      The Punitive Damages Are Not Consistent with the Relevant Provisions of the Lanham Act. ...........................................................23

II.     Defendants Were Prejudiced When the Court Permitted the Jury to Decide Count V Because that Decision Radically Transformed Defendants' Liability Under the Stipulation...............................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AAR Intern., Inc. v. Nimelias Enter. S.A.,*
  250 F.3d 510 (7th Cir. 2001) ..................................................................4

*Adidas Am., Inc. v. Payless Shoesource, Inc.,*
  No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008)........................15

*Allen v. City of Chicago,*
  865 F.3d 936 (7th Cir. 2017) ..................................................................1

*Amcast Indus. Corp. v. Detrex Corp.,*
  2 F.3d 746 (7th Cir. 1993) ....................................................................4

*Bach v. First Union Nat'l Bank,*
  149 Fed.Appx. 354 (6th Cir. 2005) ...........................................................8

*Bains LLC v. Arco Prod. Co.,*
  405 F.3d 764 (9th Cir. 2005) .................................................................16

*BASF Corp. v. Old World Trading Co., Inc.,*
  41 F.3d 1081 (7th Cir. 1994) .................................................................24

*Bert Co. v. Turk,*
  298 A.3d 44 (Pa. 2023) .......................................................................14

*BMW of North Am. v. Gore,*
  517 U.S. 559 (1996) .......................................................................6-7, 20

*Bradley v. Village of Univ. Park, Ill.,*
  59 F.4th 887 (7th Cir. 2023) ................................................................3, 4

*Bridgeport Music, Inc. v. Justin Combs Pub.,*
  507 F.3d 470 (6th Cir. 2007) .................................................................18

*Cullen v. Saddler,*
  668 F. App'x. 656 (7th Cir. 2016) ...........................................................25

*Dean v. Olibas,*
  129 F.3d 1001 (8th Cir. 1997) ...............................................................16

*Diesel Mach., Inc. v. B.R. Lee Indus., Inc.,*
  418 F.3d 820 (8th Cir. 2005) ..................................................................7

*E.E.O.C. v. AutoZone, Inc.,*
  707 F.3d 834 (7th Cir. 2013) ...............................................................8, 14

*Eden Elec., Ltd. v. Amana Co.,*
    370 F.3d 824 (8th Cir. 2004) ..................................................................7

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,*
    980 F.3d 1117 (7th Cir. 2020) ........................................................11, 14

*Ewing v. 1645 W. Farragut LLC,*
    90 F.4th 876 (7th Cir. 2024) ..................................................................3

*Fednav Int'l Ltd. v. Cont'l Ins. Co.,*
    624 F.3d 834 (7th Cir. 2010) ..................................................................3

*Firestone Fin. Corp. v. Meyer,*
    796 F.3d 822 (7th Cir. 2015) ..................................................................4

*Hamlin v. Hampton Lumber Mills, Inc.,*
    349 Or. 526 (Or. 2011) ..........................................................................23

*Horizon Health Corp. v. Acadia Healthcare Co.,*
    520 S.W.3d 848 (Tex. 2017) ..................................................................14

*Inter Med. Supplies, Ltd. v. EBI Med. Servs., Inc.,*
    181 F.3d 446 (3d Cir. 1999) ..................................................................8

*Int'l Union of Op. Eng'rs v. Lowe Excavating Co.,*
    225 Ill.2d 456 (Ill. 2006) ............................................................9, 10, 14

*JCB, Inc. v. Union Planters Bank, NA,*
    539 F.3d 862 (8th Cir. 2008) ..................................................................7

*Kauffman v. Maxim Healthcare Servs., Inc.,*
    509 F.Supp.2d 210 (E.D.N.Y. 2007) ....................................................17

*Lexington Furniture Indus. Inc. v. Lexington Co.,*
    19-cv-6239, 2022 WL 13848274 (S.D.N.Y. Oct. 24, 2022) ............. 19-20

*Mathias v. Accor Econ. Lodging, Inc.,*
    347 F.3d 672 (7th Cir. 2003) ........................................................... 22-23

*Milligan v. Bd. Of Trustees of S. Ill. Univ.,*
    686 F.3d 378 (7th Cir. 2012) ..................................................................3

*N. Contracting, Inc. v. Illinois,*
    473 F.3d 715 (7th Cir. 2007) ..................................................................3

*Planned Parenthood v. Am. Coal. Of Life Activists,*
    422 F.3d 949 (9th Cir. 2005) ................................................................14

*Puffer v. Allstate Ins. Co.,*
    675 F.3d 709 (7th Cir. 2012) ..................................................................2

*Reeves v. Sanderson Plumbing Prod., Inc.,*
    520 U.S. 133 (2000)................................................................................................1

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
    272 F.3d 1335 (Fed. Cir. 2001) ........................................................................19

*Saccameno v. U.S. Bank Nat'l Assoc.,*
    943 F.3d 1071 (7th Cir. 2019) .............................................................5, 6, 14, 21

*State Farm Mut. Auto Ins. Co. v. Campbell,*
    538 U.S. 408 (2003).............................................................. 4-5, 6, 18, 22

*Synnott v. Burgermeister,*
    No. 22-1104, 2024 WL 108784 (7th Cir. Jan. 10, 2024)................................4, 8, 23

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.,*
    15 Civ. 211, 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021)................................20

*Tiffany & Co., v. Costco Wholesale Corp.,*
    13-cv-1041, 2019 WL 120765 (S.D.N.Y. Jan. 7, 2019)................................20

*TXO Prod. Corp. v. Alliance Resources Corp.,*
    509 U.S. 443 (1993).............................................................................16, 22

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,*
    906 F.2d 1202 (7th Cir. 1990).............................................................................17

*Williams v. First Advantage LNS Screening Sols., Inc.,*
    947 F.3d 735 (11th Cir. 2020)................................................................................6

## Statutes and Other Authorities

15 U.S.C. § 1116(d)(B) ..........................................................................................24

15 U.S.C. § 1117(a)..........................................................................................18, 24

15 U.S.C. § 1117(b)..........................................................................................23, 24

15 U.S.C. § 1117(c)..........................................................................................23, 24

15 U.S.C. § 1118 ....................................................................................................24

15 U.S.C. § 1125 ....................................................................................................24

15 U.S.C. § 1125(c)(5)..........................................................................................24

Fed. R. Civ. P. 54(c)..............................................................................................25

<u>**ARGUMENT**</u>

**I.     The Punitive Damages Award Is Excessive.**

**A.     The Standard of Review is *De Novo*.**

The standard of review respecting whether the punitive damages award is excessive is *de novo*.  Curry stresses that in the Court's *de novo* review, the facts must be construed in the light most favorable to him.  Curry Br., p. 18.  Defendants agree.  However, this does not mean, as Curry suggests, that the Court should ignore evidence favoring the Defendants.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 520 U.S. 133, 151 (2000) (the court should review the record as a whole and give credence to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.") (quoting citation omitted).

**B.     Defendants Have Not Forfeited Any of The Arguments Raised on Appeal.**

In general, arguments that are presented for the first time on appeal are waived.  *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017).  "That rule serves several important purposes, including that it keeps appellate courts from resolving questions 'that require the factfinding abilities of the district judge'…[and it] also protects both parties' ability to present evidence in support of their positions."  *Id.* (internal citation omitted).  None of the purportedly forfeited arguments implicates these policy concerns because they involve questions of law or were briefed in the district court.

Curry argues forfeiture of Defendants' argument: (i) respecting three of the reprehensibility factors; (ii) that punitive damages should be assessed cumulatively instead of on a per-defendant basis; and (iii) that to the extent the disgorgement award is included in compensatory damages, only infringing profits derived from Illinois sales should be included in the punitive damages ratio. Curry Br., pp. 20-22, 29-30, 43-45. Curry is wrong.

Defendants, Curry or the district court addressed each of the above-referenced arguments in jury instructions, during the trial, or in post-trial briefs. *See* Dkt. 385, pp. 6-11; Dkt. 400, pp. 4-7; Dkt. 399, pp. 8-10; SA9, pp. 35-36 (all addressing reprehensibility factors); SA9, pp. 36-37 (discussing whether punitive damages should be assessed on per-defendant basis); Dkt. 362, pp. 2-7; Dkt. 462, 1094:21-1095:7; Dkt. 400, pp. 3-4; SA9, pp. 31-32 (arguing that the disgorgement award should not be included within compensatory damages, that the infringement was not sufficiently connected to Illinois, offering a jury instruction as to geographic scope (which the district court refused to provided given its interpretation of the Stipulation), and arguing that the jury should have been instructed that common law rights are limited by geographic scope so that it could adequately weigh Defendants' actions in determining willfulness and awarding punitive damages).

This is not a situation where Defendants have raised a novel or new argument for the first time on appeal like in *Puffer* or *Fednav.* Curry Br., p. 21, *citing Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (raising a legal theory on appeal when plaintiff

argued a different theory in the district court, never cited legal authority on the new theory, and the district court never addressed the new theory); Curry Br., p. 44, *citing Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("a liberal reading of Fednav's complaint and argument in the district court yields *no signs* of these arguments Fednav is now presenting") (emphasis added).

Even if the Court determines that Defendants did not sufficiently raise these issues in the district court, this Court may and should consider them in its *de novo* review as to whether the punitive damages are excessive, especially when the issues were before the district court and briefed and argued by the parties. *See* Def. Br., p. 29, n. 10, *citing Bradley v. Village of Univ. Park, Ill.*, 59 F.4th 887, 900-901 (7th Cir. 2023) (collecting cases). Curry ignored *Bradley* and the cases cited therein. And he cited two cases which actually support this Court's consideration of Defendants' arguments even when there is a forfeiture. *See* Curry Br., p. 21, *citing N. Contracting, Inc. v. Illinois*, 473 F.3d 715, 720 (7th Cir. 2007), and *Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876, 887-88 (7th Cir. 2024) (finding it prudent to address arguments raised on appeal despite being forfeited).[1]

The issue of whether punitive damages were properly evaluated on a per-defendant basis should also be considered because it involves a question of law decided

---

[1] In *Milligan v. Bd. Of Trustees of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) (Curry Br., p. 21), the court addressed forfeiture in dicta. As the majority opinion noted, the plaintiff never made the argument raised by the dissenting opinion in the district court <u>or</u> the appellate court, so it would be forfeited, even if raised. *Id.* at 386-87. Here, Defendants' arguments were certainly raised in this Court, which *Milligan* implicitly recognized as sufficient, and in the district court.

by the district court in declining to reduce the punitive damages award.  *See* Def. Br., p. 48, n. 15, *citing Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015); *AAR Intern., Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 523-527 (7th Cir. 2001) (deciding motion for *forum non conveniens* where the issue was fully briefed on appeal and the dispositive issue was a question of law); *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749-50 (7th Cir. 1993) (considering new factual argument where it was fully briefed on appeal and involved a question of statutory interpretation).  The argument that only those profits tied to Illinois sales may be considered in assessing punitive damages is also a question of law which should be examined by this Court.

If this Court declines to address the issues that Curry contends have been forfeited, it would yield an unjust result.  *See Bradley*, 59 F.4th at 901.  The parties briefed – and the district court addressed—each of the arguments (which preserved them for appeal), two of the issues turn on pure questions of law, and there will be no harm to the parties through this Court's consideration of the issues in its *de novo* review.  *Id.*

### C. Defendants' Conduct Was Not Sufficiently Reprehensible to Justify the Excessive Punitive Damages Award.

Curry argues, quoting *Synnott v. Burgermeister*, No. 22-1104, 2024 WL 108784, at *2 (7th Cir. Jan. 10, 2024),[2] that "all five factors must be absent to render a punitive damages award suspect."  Curry Br., p. 20.  Curry is wrong.  *State Farm v. Campbell*, on which

---

[2] *Synnott* is a nonprecedential disposition. Cir. R. 32.1.

*Synnott* relies, does not state that punitive damages will only be deemed excessive when none of the reprehensibility factors are present. Rather, it instructs that "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient…and the absence of all of them renders any award suspect." 538 U.S. 408, 419 (2003).

    1.  <u>First Factor – Curry Did Not Seek Damages for Emotional Harm and the Emotional Harm Alleged Does Not Constitute Physical Harm.</u>

It is undisputed that Curry was not physically harmed by Defendants' conduct. Curry attempts to establish the first factor by arguing that he suffered emotional harm and that such harm can constitute physical harm. In the alternative, he argues that economic harm can be sufficiently reprehensible to satisfy the first *Gore* factor. Curry Br., pp. 22-24. Neither argument passes muster.

As this Court noted in *Saccameno v. U.S. Bank Nat'l Assoc.*, 943 F.3d 1071, 1086-87 (7th Cir. 2019), "[t]he first factor is intended to draw a line – however hard to police – between physical injuries and those that are essentially economic, even if those economic injuries cause distress." Curry tries to fit his claim for economic harm into the physical harm category, arguing that he suffered emotional harm. Curry's testimony, however, consisted of a few passing statements and nothing more. *See* Curry Br., p. 22, *citing* Dkt. 458, 249:4-10 (when Curry first saw Revolution's product, he was "like confused", "upset", "shocked" and "pissed off"); *Id.* 276:16-21 ("I don't like to visit my company website because it was just so much negative information on there"). Notably, Curry

never claimed or presented any evidence that he sought or obtained medical treatment for his purported emotional distress.

The lack of evidence is not surprising given that Curry did not seek damages for emotional harm, the jury was not instructed about it and did not award damages for such harm.  Rather, the only actual damages Curry sought were for damage to his goodwill and reputation, and the jury awarded him a mere $2,500 for those damages.  *See* Dkt. 302-2, p. 86; Dkt. 462, 1108:12-1109:3 (instructing the jury that it may consider:  "[d]amage to Mr. Curry's reputation; and [l]oss of goodwill"); *Id.* at 1131:14-1132:14; 1216:10-11.

Moreover, Curry's unsubstantiated claim of emotional harm cannot be considered physical harm because he did not offer any evidence of physical symptoms.  *See Campbell*, 538 U.S. at 426 (when the harm to the plaintiff arises from "a transaction in the economic realm" and "not from some physical assault or trauma" and "there are no physical injuries," the first factor has not been met); *Saccameno*, 943 F.3d at 1086-87 (first factor not met where plaintiff did not identify any evidence that she suffered physical symptoms); *Epic*, 980 F.3d at 1141 (same).[3]

Curry's argument that mere economic injury may support the first factor is likewise deficient.  Curry Br., pp. 23-24.   Curry relies on *BMW of North Am. v. Gore*, 517

---

[3] Curry cites *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 751 (11th Cir. 2020) (Curry Br., p. 22), arguing that emotional distress, alone, may be sufficient to support the first factor, but that case is inapposite because the plaintiffs specifically sought damages for emotional distress and they produced evidence that their distress had a physical component, such as loss of appetite and headaches.

U.S. 559, 576 (1996), but *Gore* found that the harm was purely economic and that "none of the aggravating factors associated with particularly reprehensible conduct" were present. *Id.* Similarly, in *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 840 (8th Cir. 2005), the first factor was not met because the harm was economic, not physical. Curry also cites two other Eighth Circuit cases, neither of which even addressed the first factor, and both are otherwise factually distinguishable. *See* Curry Br., pp. 23-24, *citing JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 875-76 (8th Cir. 2008) (bank trespassed onto plaintiff's fenced lot, seized property on which it never made loans, sold the property, and refused to provide the proceeds to plaintiff ); *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 828 (8th Cir. 2004) ("the Court can hardly think of a more reprehensible case of business fraud").

> 2. <u>Second Factor - Defendants' Conduct Did Not Impact the Health or Safety of Curry or Others.</u>

Curry argues that the second factor weighs in his favor because Defendants' conduct caused customers to threaten him, Defendants made misrepresentations about Revolution's Diesel Test, and they sold expired product causing safety risks. Curry Br., p. 23. This evidence is totally irrelevant to Curry's claim for trademark infringement, except insofar as it pertains to damage to Curry's reputation, which damage was reflected in the jury's $2,500 award.

Also, the testimony relating to the purported safety risks associated with selling expired product was elicited through a single generic question unrelated to Diesel Test

to an employee of Revolution, and his one-word answer, without any support, such as expert testimony to support the claimed safety risks or evidence of any customers who were actually harmed.  *See* Dkt. 460, 821:12-14 ("Q. There might be safety risks from selling expired products, correct?  A. Yes.").

Curry does not cite to a single case to support the second factor.  A review of the cases where this factor was met shows that almost invariably, the facts involve a reckless disregard for the health or safety of the plaintiff or others where there was a substantial risk of physical harm.  *See, e.g. Synnott*, 2024 WL 108784, at *2 (police officers aiming loaded guns at plaintiff and his family); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 834, 839 (7th Cir. 2013) (refusing to accommodate employee and requiring him to mop floors knowing that he suffered a back injury).

On the other hand, in cases like this one involving merely economic harm, courts typically rule that the second reprehensibility factor has not been met.  *See Bach v. First Union Nat'l Bank*, 149 Fed.Appx. 354, 364-65 (6th Cir. 2005) (second factor not met where defendant's actions occurred in the "economic realm," and conduct did not display reckless disregard for the health or safety of others); *cf. Inter Med. Supplies, Ltd. v. EBI Med. Servs., Inc.*, 181 F.3d 446, 467 (3d Cir. 1999) (economic torts are "less worthy of large punitive damages awards than torts inflicting injuries to health or safety.") (quoting citation omitted).

3. <u>Third Factor – The Evidence Does Not Support Curry's Financial Vulnerability.</u>

Curry argues that the third factor has been met based on the following evidence: (a) Curry did not own a large business with multiple employees; (b) his total sales over the 20-year life of his business were around $2 million; (c) he used high-quality ingredients which were sometimes too expensive for him to afford; (d) he faced supply chain issues that forced him to reduce his product offerings; and (e) he got the seed money to start his business (20 years ago) by selling his house. Curry Br., pp. 24-25. Even when viewing this evidence in the light most favorable to Curry, the third factor cannot be met.

As Defendants showed in their opening brief, the fact that Curry owned a small business without any employees cannot, by itself, mean that he is financially vulnerable. Def. Br., pp. 30-31. Curry ignored *Int'l Union of Op. Eng'rs v. Lowe Excavating Co.*, 225 Ill.2d 456, 471-72 (Ill. 2006), which held that Lowe, a small business which had to "engage in odd jobs in the winter to stay afloat" was not financially vulnerable.

The testimony that Curry had total sales of $2 million over a twenty-year period, without more, also does not establish financial vulnerability. Curry presented no evidence as to his profits to put this testimony into context. Curry's testimony that he sometimes could not afford ingredients and that he faced supply chain issues was vague, it did not include any indication of the time period at issue, and also was not tied to his profitability. Finally, Curry's testimony that he had to sell his house to start his business

is a red herring because he started his business in 2002; the infringement began 14 years later.  Dkt. 458, 226:4-12.

It is undisputed that Curry did not present any evidence at trial that Defendants' conduct impacted or risked his livelihood, lifestyle or ability to maintain his business, that his business was insolvent or in financial jeopardy, or that Defendants' conduct created a risk that Curry would default on any financial obligations.  *See* Def. Br., p. 30.  The most relevant evidence on "financial vulnerability" is Curry's own testimony that he enjoyed his highest sales during the period when Revolution was marketing and selling its Diesel Test product.  Dkt. 458, 302:7-303:24.  Based on the lack of evidence of financial vulnerability, the third factor has not been met.

### 4.  Fourth Factor - The Defendants were not Recidivists.

The fourth factor is a relevant subfactor "but with less force" and it is afforded little weight in the overall assessment of reprehensibility.  Def. Br., p. 32, *citing Lowe*, 225 Ill.2d at 480.  Curry contends that the fourth factor has been met because Defendants repeatedly infringed on Curry's trademark.  Curry Br., pp. 25-26.  Although Revolution sold its Diesel Test for slightly more than one year (fall of 2016 until the first quarter of 2018, at the latest),[4] Curry does not (and cannot) dispute that Defendants actions involved

---

[4] Curry testified that he saw a website advertising Revolution's Diesel Test on May 9, 2020 (Dkt. 428-6; Dkt. 458, 264:11-265:7), but he provided no evidence that he clicked on the link in the website and confirmed that the product could be purchased, or that there were any sales of Diesel Test at that time.  *Id.*, 318:17-319:14.  This is not surprising given the district court's confirmation that any sales after October 2017 were minimal.  SA9, pp. 29-30.

only a single product (of Defendants' myriad of products) and that Defendants had never

been involved in a trademark dispute prior to this lawsuit.

Curry relies on *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1141

(7th Cir. 2020).  Curry Br., p. 25.  After the plaintiff repeatedly refused to grant defendant

access to plaintiff's web portal, the defendant found a backdoor way to gain access

through an individual who falsely identified himself as a representative of a licensee of

plaintiff.  *Id.* at 1125.  Through that individual, the defendant gained unfettered access to

plaintiff's web portal for two years, used it thousands of times and downloaded 150,000

pages of confidential information.  *Id.*  There was no similar scheme or deception here.

> 5.  <u>Fifth Factor - The Harm to Curry Did Not Result from Intentional Malice, Trickery or Deceit.</u>

The last factor – whether the harm was the result of intentional malice, trickery, or

deceit, or mere accident –  weighs against a finding of reprehensibility.

Curry highlights certain evidence which he contends supports the fifth factor.

Curry argues that he sent Defendants multiple cease and desist messages, yet Defendants

did not stop selling their Diesel Test.  Curry Br., p. 26.  But, what Curry did not mention

or refute is that he sent his cease and desist messages through Facebook (not a method

Defendants would expect to receive a valid legal demand) and that the messages were

wrought with punctuation and grammatical issues and strange capitalization, which

caused Defendants to question the legitimacy of Curry's claim.  Def. Br. pp. 14-15.  It is

undisputed that Curry never contacted Defendants again after the November 2016

Facebook messages, even after a Revolution employee expressed a desire to discuss and resolve the issues raised by Curry, until he filed suit. *Id.* at p. 15.

Curry next argues that, despite Defendants' testimony that Revolution stopped selling Diesel Test in 2018 (when the case was dismissed and on appeal), the evidence showed that Defendants continued to sell beyond that time. But, as noted above, and as the district court found, it is undisputed that any sales beyond 2017 were "minimal." SA9, pp. 29-30. And there was no evidence of any actual sales occurring after 2018. This is consistent with the unrefuted testimony that Defendants started marketing and selling a different product, in lieu of Diesel Test, called RT 2.0 in October 2017. Dkt. 459, 485:2-20; Dkt. 460, 780:10-781:16 (testimony from a Revolution employee).

Curry argues that the Stipulation is not evidence of good faith because he contends that Barry tried to renege on the Stipulation. This is simply untrue. The Defendants agreed in the Stipulation that Revolution, not Barry or Joshua, was liable for infringement. JA100, ¶2. Barry and Joshua's personal liability was expressly disputed. *Id.* at ¶4. At trial, Barry admitted that he was a party to the Stipulation and that Revolution admitted liability. Dkt. 460, 641:8-10; 643:2-644:17. However, he testified that he personally did not admit liability, which is consistent with the Stipulation.

Lastly, Curry argues that the Defendants' refusal to withdraw their opposition to Curry's trademark application until the district court ordered them to do so as part of the permanent injunction, further evidences Defendants' reprehensibility. But this evidence

was never presented to the jury and could not have formed a basis for its punitive damages award because the court order came months after the trial.[5] *See* SA9, p. 53.

Several key points raised in Defendants' opening brief remain unrefuted: (a) there was no malice, trickery, or deceit about Defendants' decision to sell Diesel Test; (b) Defendants never made any misleading statements as to the origin of their Diesel Test product; (c) Defendants never made any false or derogatory assertions about Curry, his business or products in selling their Diesel Test product; (d) Defendants did not have any ill will or malice towards Curry or his business, and they did not have any desire to harm Curry or his business; (e) Defendants voluntarily stopped marketing and selling Diesel Test while the dismissal of this case was being appealed (2018-2020); and (f) Defendants agreed to a preliminary injunction in August 2020 agreeing not to use the Diesel Test mark. Def. Br., pp. 35-36; Dkt. 131.

Curry also failed to address the distinction between a finding of willfulness, as the jury found, and acts done with intentional malice, trickery or deceit. *See* Def. Br., pp. 36-37. Just because the jury determined that the Defendants acted willfully, that alone does not support a conclusion that Defendants acted with requisite intentional malice, trickery or deceit needed to satisfy the fifth factor. *Id.*

---

[5] Defendants also had a good faith basis to stand on their opposition. *See* Dkt. 398, pp. 10-12.

Based on a review of all of the evidence in conjunction with applicable legal authority, Defendants' actions simply do not rise to the level of reprehensibility to justify the excessive punitive damages awarded in this case. *See* Def. Br., p. 38, *citing Saccameno*, 943 F.3d at 1088; *Epic*, 980 F.3d at 1142, 1144; *Lowe*, 225 Ill.2d at 483, 490.

**D.    The Ratio Between Compensatory and Punitive Damages is Excessive Under the Constitution and Illinois law.**

      1.    <u>Where All Defendants Are Liable to a Single Plaintiff for the Same Actual and Punitive Damages, The Punitive Damages Should Be Reviewed in the Aggregate and Not on a Per-Defendant Basis.</u>

Punitive damages should be assessed collectively, and not on a per defendant basis. *See* Def. Br., pp. 48-49, *citing E.E.O.C. v. AIC Sec. Inv., Ltd.*, 55 F.3d 1276, 1287 (7th Cir. 1995) (comparing total punitive damages awarded—$150,000 vs. $75,000 per defendant— with compensatory damages).

Curry argues to the contrary. He cites several cases all of which involved multiple plaintiffs and/or defendants where the jury awarded different amounts of punitive damages against each defendant. Curry Br., pp. 30-31, *citing Planned Parenthood v. Am. Coal. Of Life Activists*, 422 F.3d 949, 961 (9th Cir. 2005) ("in a multi-plaintiff, multi-defendant action, an approach that compares each plaintiff's individual compensatory damages with the punitive damages awards against each defendant more accurately reflects the true relationship between the harm for which a particular defendant is responsible"); *Bert Co. v. Turk*, 298 A.3d 44, 72-73 (Pa. 2023); *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 878-79 (Tex. 2017) (jury determined different amounts of

compensatory damages and culpability for each defendant and, pursuant to Texas statute, punitive damages were required to be assessed on an individual basis).

Here, Curry is the only plaintiff, the damages were awarded against all Defendants based on the same set of facts, and the punitive damages awarded against each Defendant were identical ($300,000). Without the complexities of a multi-party case, where separate defendants are held liable in different amounts for different wrongful acts, the total punitive damages should be compared to actual damages. *AIC*, 55 F.3d at 1287.

> 2.    The District Court Erred in Including the Disgorgement Award in the Punitive Damages Ratio Where the Jury Awarded Actual Damages.

Where, as here, judgment is entered that includes a specific damages award for the actual harm to the plaintiff ($2,500), that is the number that should be compared to punitive damages, not an additional equitable award of Defendants' profits. This result is supported by case law, including *adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *15 (D.Or. Sept. 12, 2008) (Def. Br., pp. 42-43), which held that a disgorgement award under the Lanham Act should <u>not</u> be included within compensatory damages for purposes of the punitive damages ratio. This is the only authority directly on point on this issue. Curry completely ignored *adidas*. Further, neither Curry nor the district court cited any cases which included a disgorgement award in the punitive damages ratio.

There are numerous other reasons it was error for the district court to include the disgorgement award in the punitive damages ratio (Def. Br. pp. 39-48), which Defendants will not repeat here, except to note that Curry ignored the distinction between compensatory damages (which focus on harm to the plaintiff) and an equitable award of Defendants' profits (which focus on profit of the violator) (*Id.* at pp. 39-41), and that this distinction was evidenced and supported by the jury instructions. *Id.* at p. 42.

Curry argues that the district court properly included Defendants' infringing profits in the ratio because those profits reasonably approximated the *potential* harm to him. Curry Br., pp. 32-36, 40-41. There are several problems with this argument.

First, courts typically consider potential harm within the compensatory damages number only when harm *might* have occurred, but did not. In *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 459-60 (1993), the defendants attempted to defraud the plaintiff out of royalties of which the plaintiff was not aware. The court considered the potential harm to the plaintiff had the fraud been successful – the unrealized royalties – which were formulaic, and the fact that the scheme was part of a larger pattern of fraud and deceit. *Id.* at 460-62; *See also Dean v. Olibas*, 129 F.3d 1001, 1008-08 (8th Cir. 1997) (considering the harm that might have resulted to future victims).

However, when the wrongful act succeeded, as it did here, potential harm is not properly considered in the punitive damages ratio because actual damages can be (and were) awarded. *See Bains LLC v. Arco Prod. Co.*, 405 F.3d 764, 776 (9th Cir. 2005) (refusing

to consider potential harm where the wrongful conduct succeeded); *Kauffman v. Maxim Healthcare Servs., Inc.*, 509 F.Supp.2d 210, 219 (E.D.N.Y. 2007) (same).

Curry argues that Defendants' conduct had the potential to ruin a successful business by harming his relationships with customers and destroying the mark's reputation. Curry Br., pp. 33-35. But, this was the basis for Curry's claim for actual damages to his reputation and goodwill. The jury expressly found that this damage amounted to $2,500.

And, importantly, at the time of trial, there was no basis for concern of future potential harm to Curry because it was undisputed that Defendants stopped selling their product 5 years earlier, that a preliminary injunction had been in place for years, and that Curry did not provide any evidence of his actual or anticipated lost sales or profits. Accordingly, there was no basis for the district court to consider potential harm in upholding the punitive damages award.

Second, aside from the potential harm argument, the general rule is that a disgorgement remedy under the Lanham Act is not based on harm to the mark owner (rather, its focus is on any unjust benefit to the defendant) and, therefore, it cannot be included in the compensatory damages number. *Cf. Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) (an award of defendant's profits flows not from plaintiff's proof of its injury or damage, but from its proof of defendant's unjust enrichment or the need for deterrence). This reasoning has particular application here

because Curry did not present any evidence of his lost sales or profits, which evidence (if it existed) would have represented harm to Curry.

Finally, the disgorged amount also should not be considered in the punitive damages ratio because then the compensatory damages award would include a deterrent element (the disgorgement award) that is duplicated in the punitive damages award. *Campbell*, 538 U.S. at 426; *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 489 (6th Cir. 2007) (declining to include profits of the copyright infringer in the compensatory to punitive damages ratio, reasoning that the purpose for awarding defendant's profits overlaps substantially with the goals of punitive damages).  In light of this, the Court should, at a minimum, reduce the amount of punitive damages to avoid "double counting" the deterrence aspect of punitive damages.  Def. Br., pp. 40, 44, 51-52.

Curry tries to refute this argument based on the language of the Lanham Act, which refers to an award of defendant's profits as "compensation and not a penalty." Curry Br., p. 39, *citing* 15 U.S.C. §1117(a).  Compensation, however, is not necessarily the same as actual damages used for purposes of the punitive damages ratio.  Indeed, the Lanham Act differentiates between actual damages sustained by the plaintiff and defendants' profits, and refers to them both as "compensation and not a penalty."  *Id.* But, if Defendants' profits were a proxy for Curry's damages, then that issue would have been decided by the jury instead of the judge, as was the case here.

Curry relies upon several cases to support his argument that the disgorgement award was properly considered by the district court in assessing punitive damages. None of those cases, however, are directly on point or justify the punitive damages award. Curry primarily relies on *Epic*, but even Curry acknowledges that the Court's inclusion of unjust enrichment damages in the ratio is *not* binding precedent because the defendant waived the issue. *See* Curry Br., p. 38. *Epic* is further distinguishable for the reasons explained in Defendants' opening brief (at pp. 44-46).

Although *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1350 (Fed. Cir. 2001), considered unjust enrichment damages in the punitive damages ratio, that case did not involve a statutory remedy. This is an important distinction because disgorgement is a remedy under the Lanham Act (which does not permit punitive damages), not a remedy for common law trademark infringement. *Rhone* does not support an argument that statutory damages should be included in the punitive damages ratio for a common law claim. Further, the court in *Rhone* noted that the potential harm to plaintiff would have continued had defendant's fraud proceeded undetected and, as such, it was properly considered in the ratio. As explained above, there was nothing hidden about Revolution's sales and there was no threat of future potential harm because sales stopped years before trial.

Curry also relies on three Southern District of New York cases. Curry Br., p. 38. The courts in *Lexington Furniture Indus. Inc. v. Lexington Co.*, 19-cv-6239, 2022 WL

13848274, at *10 (S.D.N.Y. Oct. 24, 2022), and *Tiffany & Co., v. Costco Wholesale Corp.*, 13-cv-1041, 2019 WL 120765, at *6 (S.D.N.Y. Jan. 7, 2019), never addressed the issue of whether a disgorgement award should be included within the punitive damages ratio; that issue was not before those courts. *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 15 Civ. 211, 2021 WL 1553926, at *10 (S.D.N.Y. Apr. 20, 2021), involved an award for violation of the Defend Trade Secrets Act, which permits damages based on actual loss, unjust enrichment, and *statutory* punitive damages. 2021 WL 1553926, at *10.

       3.     <u>Even If the Disgorgement Award Is Included in the Ratio, It is Not Constitutionally Permissible to Base a Punitive Damages Award On Sales and Profits Made Outside of Illinois.</u>

The district court computed the disgorgement award using profits on Revolution's nationwide sales, not Illinois sales.  To the extent the disgorged profits are included within the punitive damages ratio at all, only that portion of the profits attributed to Illinois sales may be included in the ratio because Illinois has no interest in basing a punitive damages award on economic activity in the other 49 states.  *See* Def. Br., p. 47, n. 14; *Gore*, 517 U.S. at 572-73 (economic penalties that a State inflicts on those who transgress its laws, such as judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy; a State does not have the power to punish the defendant for conduct that had no impact on the State or its residents).

The jury and district court were presented with evidence of Revolution's Illinois sales – 4.3% of its total sales nationwide.  Dkt. 44-1,¶6; Dkt. 459, 368:25-370:11.  Curry did not challenge this evidence.  So, although the district court concluded that Revolution's profits totaled $547,095.44, the amount of profits that could be considered in determining the appropriateness of punitive damages is $23,525.10 ($547,095.44 x 4.3%).  The resulting punitive damages ratio is still extreme – 34.58:1 ($900,000/($2,500 + $23,525.10)).[6]

This Court should not order a new trial on damages if it excludes Defendants' profits on sales outside of Illinois when comparing compensatory damages to punitive damages.  Defendants are not challenging the disgorgement award, but only whether the award was properly considered in determining whether punitive damages are excessive.  This is not an issue within the province of the jury, but an issue of law for the Court to consider on appeal.  *See Saccameno*, 943 F.3d at 1092 ("we agree with every circuit to address this question that the constitutional limit of a punitive damage award is a

---

[6] Curry incorrectly computes the ratio by multiplying 4.3% by Revolution's total <u>sales</u> (Curry Br., pp. 46-47), but the appropriate number to consider would be 4.3% of Defendant's <u>profits</u>.

question of law not within the province of the jury, and thus a court is empowered to decide the maximum permissible amount without offering a new trial").[7]

### 4. The Ratio of Compensatory to Punitive Damages Is Excessive.

Regardless of whether this Court views the punitive damages collectively or on a per defendant basis, the award is excessive. Curry does not even attempt to justify the ratio of 360:1, which is the ratio of Curry's actual damages ($2,500) to total punitive damages ($900,000). Instead, Curry argues that a ratio of 120:1 ($300,000 in punitive damages to $2,500 in actual damages) is not grossly excessive. Curry Br., p. 41-42. A ratio in this range, however, is presumptively excessive. *See Campbell*, 538 U.S. at 426 ("there is a presumption against an award that has a 145-to-1 ratio").

Curry has not cited a single case awarding punitive damages on a claim for trademark infringement or under a remotely similar fact pattern. *See* Curry Br., p. 42, *citing TXO*, 509 U.S. at 446, 460-62 ($19,000 in actual damages and $10 million in punitive damages for slander of title where defendants' behavior could have caused millions of dollars of damage to other victims in their pattern of fraud, trickery and deceit); *Mathias*

---

[7] Curry argues that prejudgment interest on the disgorgement award should be included in the punitive damages ratio. Prejudgment interest should only be included to the extent the disgorgement award is included. Attorney's fees cannot be included because (1) the district court has not awarded any post-trial attorney's fees, as Curry acknowledges (Curry Br., p. 49); and (2) the attorney's fees that Defendants were previously ordered to pay were for discovery sanctions unrelated to Defendants' trademark infringement. Curry has not cited any legal authority where a monetary sanction was included in the punitive damages ratio and Defendants were unable to locate any such authority.

*v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-75, 678 (7th Cir. 2003) ($5,000 in actual damages and $186,000 in punitive damages where defendant knowingly rented hotel rooms infested with bedbugs); *Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 537-38 (Or. 2011) ($8,000 in compensatory damages and $175,000 in punitive damages where defendant unlawfully refused to reinstate employee who was injured at work); *Synnott*, 2024 WL 108784, at *2 ($0 in compensatory damages and $85,000 in punitive damages where police officers entered plaintiff's home and aimed loaded guns at him).

To the extent punitive damages are appropriate in this case, punitive damages should not exceed the single digit ratio. *See* Def. Br., p. 49 (collecting cases involving claims for trademark infringement where punitive damages did not exceed the single digit ratio); *Id.* at p. 50 (collecting Illinois cases involving far more egregious conduct where punitive damages were reduced to 11:1 and 7:1). Curry ignored these cases.

### E. The Punitive Damages Are Not Consistent with the Relevant Provisions of the Lanham Act.

The third *Gore* guidepost assesses whether punitive damages are consistent with penalties for comparable conduct. Curry relies on Sections 1117(b) and 1117(c) of the Lanham Act to argue that treble and statutory damages of up to $2 million allowed by those provisions support the punitive damages awarded in this case.

As an initial matter, the Lanham Act does not allow for punitive damages. Nevertheless, neither Section 1117(b) nor 1117(c) are applicable in this case – namely, because the only claim under the Lanham Act remaining at the time of trial was brought

pursuant to Section 1125.  Thus, the relevant provision is Section 1125(c)(5), which states

that a mark owner is entitled to the remedies set forth in Section 1117(a) and 1118.[8]  15

U.S.C. § 1125(c)(5).

Section 1117(a) allows the mark owner to recover defendant's profits, damages

sustained by the plaintiff and costs.  15 U.S.C. §1117(a).  That section also allows the court

to enter judgment "for any sum above the amount found as actual damages, not

exceeding three times such amount."  *Id.*  That equates to a maximum of $7,500 (3 x

$2,500).  Section 1117(a) does <u>not</u> allow trebling of the award of defendant's profits nor

does it allow for $2 million in statutory damages.[9]  Curry even admitted that he was not

entitled to such remedies during the jury instruction conference.  *See* Dkt. 461, 1058:21-

1059:13.

On the other hand, the Court should look to the purpose for awarding a

defendant's profits under Section 1117(a) of the Lanham Act, which is to deter the

wrongdoer from continuing its violations, particularly where damages are nominal.  Def.

Br., pp. 51-52, *citing BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1096 (7th Cir.

1994).  Deterrence is also one of the ultimate purposes of punitive damages under Illinois

law.  Def. Br., p. 52.  The deterrence objective has been more than met through an award

---

[8] Section 1118 is not applicable; it involves destruction of items unlawfully using a mark.

[9] Section 1117(b) and (c) also do not apply because Curry's Diesel Test mark was not registered with the USPTO pursuant to Section 1116(d)(B), which is a prerequisite to the relief provided by those sections.

of nearly $550,000 in disgorged profits, when Curry's harm was only $2,500.  The Lanham

Act does not support any further enhancement of damages.

## II. Defendants Were Prejudiced When the Court Permitted the Jury to Decide Count V Because that Decision Radically Transformed Defendants' Liability Under the Stipulation.

The key issue in deciding whether the district court erred in denying Defendants'

motion to strike the jury demand is whether Defendants were prejudiced by that ruling.

*Cullen v. Saddler*, 668 F. App'x. 656, 658 (7th Cir. 2016), *citing* Fed. R. Civ. P. 54(c)

(substantial increase in liability can constitute prejudice).  Defendants established

prejudice through the fact that they stipulated to liability "under" Count V (JA100, ¶2),

which was a claim for injunctive relief, and then had to defend a claim for damages at

trial– but without being able to contest liability or the scope of damages.  *See, e.g.* Dkt.

362, pp. 4-6; Dkt. 462, 1094:21-1095:7 (rejecting Defendants' request to limit liability and

damages based on geographic scope).

Paragraph 2 of the Stipulation reads: "Revolution is liable for infringing Plaintiff's

Diesel Test mark under…Count V of Plaintiff's Complaint."  JA100, ¶2.  Nowhere in

Count V did it state that Curry was seeking anything other than injunctive relief.  Curry

does not refute this point.  Moreover, after the Stipulation and injunction were entered,

every issue in Count V was resolved.[10]

---

[10] Although Paragraph 4 of the Stipulation states that "[i]t is disputed as to…(d) the amount of damages as to all Counts," (JA100, ¶4) this language is best read to mean that there was a dispute as to damages for any count which requested damages, which Count V did not.

Despite the plain language of the Stipulation, which is a contract subject to well-accepted rules of contract interpretation (*See* Def. Br., p. 56), the claim was allowed to go to the jury and the jury awarded substantial punitive damages at a time when the Defendants' liability had already been determined (by Stipulation) on a claim solely seeking injunctive relief, Defendants had already stopped selling Diesel Test, and Defendants had stipulated to a preliminary injunction.  When the district court denied the Defendant's Rule 39(a) Motion, it substantially increased the Defendants' potential liability from simply agreeing not to use Curry's mark to potentially millions of dollars of personal liability.  Under *Cullen*, that substantial increase in liability demonstrates prejudice.  The Court can reach this conclusion by simply reviewing the Complaint, the Stipulation, and the jury's award.

All of the events that Curry recites to try to convince this Court that the Defendants were aware or had "fair notice" of his quest for punitive damages are from 2022 (Curry Br., pp. 13-14), more than one year *after* the Stipulation was entered in 2020.  The only facts relevant to this analysis, however, are those at the time the Stipulation was entered into.

Curry makes the bald assertion that the Defendants were not prejudiced, but he never attempts to explain how it was not prejudicial for Defendants to be bound by the Stipulation as to liability on a claim seeking only injunctive relief, while Curry was allowed to subsequently change his mind and pursue and obtain $900,000 in punitive

damages. Curry also never addressed the legal authority cited by Defendants. *See* Def. Br., pp. 54-55, 57-58.

The district court's interpretation of the Stipulation should be rejected by this Court in a *de novo* review of that issue, and this Court should find that due to the clear prejudice to Defendants made possible by a radical expansion of financial exposure under Count V *after* liability had been determined via the Stipulation, the district court abused its discretion in denying Defendants' Motion to Strike the Jury Demand.

Respectfully Submitted,

BARRY NUSSBAUM, JOSHUA NUSSBAUM and REVOLUTION LABORATORIES, LLC

*/s/ Amy M Gibson*
Amy M. Gibson
One of their Attorneys

Counsel for Defendants-Appellants
Matthew De Preter (ARDC# 6291503)
cdepreter@agdglaw.com
Amy M. Gibson (ARDC #6293612)
agibson@agdglaw.com
Gary Hollander (ARDC #6181915)
ghollander@agdglaw.com
Aronberg Goldgehn Davis & Garmisa
225 W. Washington, Suite 2800
Chicago, Illinois 60606
p: (312) 828-9600
f: (312) 828-9635

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 6,958 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated:   April 11, 2024

<u>/s/  *Amy M. Gibson*            </u>
Amy M. Gibson

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2024, the Reply Brief of Appellants was filed with

the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by

using the appellate CM/ECF system. I certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/  *Amy M. Gibson*
Amy M. Gibson